## ALLEN and another *v.* PIERPONT.

*(Circuit Court, D. Connecticut. December 27, 1884.)*

PRINCIPAL AND AGENT—CONTRACT TO PROCURE ADVERTISEMENT—AGENT PERSONALLY INTERESTED—ACTION FOR COMMISSIONS.

A firm of brokers, as agents for defendant, undertook to have his advertisements inserted in country newspapers, the proprietors of which were willing to furnish the required space for the required time upon the faith of defendant's written promise to sell to them from one to three feed-cutters, manufactured by him, at a reduced price,—the reduction in the price being the compensation which the publishers were to receive. The defendant was thus to advertise his implements and sell them at a profit, and agreed to pay the brokers five dollars per newspaper for insertions so made. Instead of carrying out this arrangement the brokers had the advertisements inserted in newspapers in which they owned at the time, by contract with the publishers, the required space, or in which they had procured the insertion of the advertisements solely by a consideration moving from themselves, and the obtaining the implements was no inducement to the newspaper proprietors. The agents intentionally prevented the defendant from receiving all the benefits which they undertook to obtain, and made only a nominal performance of their contract. On the refusal of defendant to pay the agreed commissions they brought suit therefor. *Held,* that they had not acted in good faith, and were not entitled to recover.

*E. P. Arvine* and *Talcott H. Russell,* for plaintiffs.

*John W. Alling,* for defendant.

SHIPMAN, J. This is an action at law upon the following contract, which was entered into on August 1, 1882, between the plaintiffs, who are advertising agents or brokers, and the defendant, who is a manufacturer of agricultural implements: ,

"*Allen Bros.*—GENTLEMEN: You are hereby authorized and employed to contract for us for the insertion of our advertisement, as furnished by us, in any number of country newspapers, not to exceed five hundred; said advertisement to occupy a space of four inches, single column, for a period of six months. .

"You are also authorized to make, sign, and deliver for us, and in our name, three due-bills in favor of each publisher, or order, and we agree to accept each in the following manner, and not otherwise, to-wit: When accompanied by $16, (sixteen dollars,) in cash, as full payment for one of our 10 Baldwin American feed-cutters, the list price being $26, the three due-bills calling for three cutters.

"We further agree to pay you for your services a cash commission of five dollars for each paper in which you procure the insertion of the above advertisement; said commission to be due and payable upon presentation of a copy of each paper containing the advertisement, and a contract of the following form signed by the publisher:

"Paper, ————.
"Town, ————, State, ————。
"Date, ————, 188—.

"*Allen Bros.*—GENTLEMEN: The undersigned hereby agrees to insert the four-inch single-column advertisement of C. Pierpont & Co. for a period of six months, and to send you a copy of paper each week during the term of this contract, in consideration of which you are to furnish the above advertiser's due-bill as per agreement.

[Signed]　　　　　　　　　　　　　　　　"————————.

"We also authorize you to furnish all the electrotypes necessary to carry out the contract, and agree to pay you 19 cents apiece for each electrotype used.

"You to forward said cuts to papers at your own expense. .

"This agreement to be and remain in force for a period of one year. You are to discontinue making arrangements for our advertisements any time we give you written notice to that effect; all business in transit applying on this contract. 　　　　　　　　　　　　　　　　　　C. PIERPONT & Co.

"D. W. BALDWIN, Atty.

[Signed in duplicate.] 　　　　　　　　　"ALLEN BROS."

The complaint avers that in pursuance of said agreement the plaintiffs afterwards procured the insertion of the defendant's advertisement in 188 country newspapers for a period of six months, each advertisement in each paper occupying the space of four inches; and also procured the execution of 188 contracts, one signed by the publisher of each of said newspapers, corresponding with the form described in the contract between the parties to the suit, and delivered said contracts to the defendant; and that the plaintiffs also furnished one electrotype for each of said papers, and furnished to the defendant copies of each of said newspapers containing said advertisements, and requested payment of the commissions; but that the defendant has only paid the sum of $129.75, being the amount due for the commissions upon and the electrotypes for advertisements in 25 newspapers.

The third, fourth, fifth, sixth, and eighth paragraphs of the defendant's answer are as follows:

(3) "The defendant avers that if the plaintiffs did procure the insertion of said advertisement in any of said papers, or did procure the execution of any of said contracts, that the publishers of said papers were induced to execute said contracts and insert said advertisements, not by reason of the undertaking of the defendant to furnish to said publishers said three cutting-machines for the price of $16 dollars each, being a reduction of $10 from the defendant's regular list-price, as was provided in said agreement, Exhibit A, but solely by reason of an especial pecuniary or other valuable consideration directly paid or promised to said publishers by the plaintiffs, and in many instances the plaintiffs had previously bought the advertising space in which the advertisements in question were to appear, or otherwise owned or controlled such space, and in such instances the plaintiffs simply directed the proprietors of said papers to insert in such space the advertisements in question, and the furnishing to said proprietors of such newspapers the due-bills in question was no inducement whatever to the insertion of the advertisement in their newspapers.

(4) "At said price of $16 for each machine there would be a considerable profit to the defendant, viz., a profit of $5 on each machine over and above the actual cost of the same, which fact the defendant stated to the plaintiffs at the time said Exhibit A was executed. And it was also then stated by and between the parties that every proprietor of a paper undertaking to publish said advertisement, in consideration of a right to buy of the defendant from one to three cutting-machines at $16 each, would at least buy one; and so that the profit to the defendant on each sale would nearly pay the commission of the plaintiffs in procuring said contract.

(5) "None of the proprietors of said newspapers with whom the plaintiffs claim to have negotiated the publication of the defendant's advertisement, nor the indorsee of any due-bill issued to said proprietors by the plaintiff, as provided by the agreement, Exhibit A, have ever sent to the defendant $16 for any cutting-machine, or negotiated with the defendant in any way in relation thereto.

(6) "On or about October 14, 1882, the plaintiffs presented to the defendant copies of twenty-five newspapers containing said advertisement, and twenty-five contracts which purported to have been made by the publishers of said papers."

(8) "The defendant, believing that said 25 contracts had been procured by the plaintiffs in pursuance of said agreement, Exhibit A, did, on or about November 4, 1882, pay to the plaintiff $129.75."

The answer also alleges that on October 18, 1882, the defendant notified, in writing, the plaintiffs to cease the making of any more of said contracts. The defendant also alleges the facts in the recited paragraphs, by way of counter-claim, to recover from the plaintiffs $129.75. The plaintiffs demur to the sufficiency of the third, fourth, and fifth paragraphs, which substantially contain the defense, and also to the sufficiency of the averments in the counter-claim.

The defense is, in fact, though not in form, that of fraud; and the counter-claim is based upon the theory that the money which was paid by the plaintiff was obtained from him through, and in ignorance of, the subsequently ascertained fraud.

The plaintiffs are brokers, and as agents for the defendant undertook to perform for him the service specified in the contract, and thereby

obtain for him the benefits which would naturally result from the honest and fair fulfillment of their agreement. The service was to obtain the insertion of his advertisement in newspapers, the proprietors of which were willing to furnish the required space for the required time upon the faith of his promise to sell to them from one to three feed-cutters at a reduced price. The publishers were to receive their compensation in the reduction of the price of the implements, and, if they had published the advertisements in order to be able to buy feed-cutters at a reduced rate, they would probably have made the purchase. The defendant was to advertise his feed-cutters and also to sell them at a profit, and for the labor and time spent in obtaining this double benefit he was to pay five dollars per newspaper. The advertisements and the sales were each important; the latter might be as important as the former. The plaintiffs knew the importance to the defendant of having the advertising done upon the terms which he proposed, as is apparent from paragraph 4 of the answer, but they fraudulently executed their undertaking in such a manner as to deprive him of a material part of the benefit which would naturally have resulted from the honest performance of their contract. They actually performed the work intrusted to them, either by inserting the advertisement in newspapers in which they had previously bought the requisite space, or the right to control such space, or by hiring the proprietors to insert the advertisement upon some consideration moving from themselves. In all cases the execution of the contract by the publishers was a mere form, and the opportunity to buy feed-cutters at a reduced price did not enter into the consideration for printing the advertisement. The plaintiffs made a nominal and apparently literal, but did not make a substantial and real, performance of their contract, and the services which they rendered were to a great extent a sham. They went through the appearance of doing what they undertook to do, and now ask for full compensation from the defendant as if pretense was equivalent to reality.

The elementary principles which govern the decision of the case are stated in all the text-books, and in one of them very clearly, as follows:

"One of the rules, which will be found more particularly applicable to the relation of principle and agent is the one ' that good faith should always be observed,' and also the one that an agent cannot act, so as to bind his principal, when he has an adverse interest to him in himself. This rule, says Mr. Justice STORY, ' is founded on the obvious consideration that the principal bargains in the employment for the exercise of the disinterested skill, diligence, and zeal of the agent for his exclusive benefit." Petgr. Princ. & Ag. 25.

The second of these principles is applicable to all the instances in which the plaintiffs furnished their own advertising space in the various newspapers for the use of the defendant. They were agents

to buy advertising space, and were also sellers of their own property. They made the actual contract with themselves, and went through the form of obtaining the contract which they were employed to obtain. The agent to buy property, who, in the pretended discharge of his agency, sells his own property to his principal, without his knowledge, is not entitled to commissions. The first of these principles is applicable to the claim of the plaintiffs for commissions upon the other advertisements. By a pecuniary or other consideration moving from themselves, they obtained the insertion of the advertisements, but by this course of conduct they intentionally prevented their employer from receiving the other benefits which they undertook to obtain for him. It is true that they performed a part of the service which they entered upon, and many cases may be suggested in which an agent should receive compensation, although he has not carried out an undertaking exactly upon the terms upon which it was intrusted to him. 2 Kent, Comm. 619, (6th Ed.) But in this case an important part of the business which they undertook to do was actually, though not in form, omitted to be done, and was omitted by a course of conduct which was a breach of the good faith which it is indispensable should be observed between the principal and agent. It may be said that the plaintiffs should receive the sum which was agreed to be paid for the electrotypes which they might furnish to the different newspapers, but those electrotypes were to be furnished to those papers in which the advertising was done, upon the terms which the agents were employed to obtain; and it has heretofore been said that these terms were entered into by all the proprietors only as a matter of form.

There are other grounds of demurrer, technical in their character, which I do not consider of importance. The demurrer is overruled.