<hr />

HOFFLIN et al. v. MOSS.

(Circuit Court of Appeals, Eignth Circuit. April 15, 1895.)

No. 547.

1. PRINCIPAL AND AGENT—DUTY OF AGENT.
   Defendant, a manufacturer of medicines, made an agreement with plaintiff by which he authorized plaintiff to make contracts with newspapers for the insertion of defendant's advertisements, and agreed to pay therefor by accepting orders for his medicines from the publishers of the newspapers at a price considerably below the market price, but sufficient to yield a profit, and also agreed to pay plaintiff $2.75 for his services in procuring each such advertising contract. Plaintiff sued defendant for the agreed commission for procuring a large number of such advertising contracts, and defendant set up, in answer, that the contract between him and plaintiff had been procured by plaintiff's representations that the sole consideration to be given to the publishers of the papers would be the sale of the medicines at the reduced price, whereby defendant would not only make a profit, but would cause his medicines to be put on sale at the places where they were advertised; that such representations were false, and plaintiff in fact never attempted to make advertising contracts on such terms, but inserted the advertisements in papers in which he already controlled the space; and that no orders for medicines had in fact been received by defendant. On demurrer to the answer, *held*, that it presented a good defense; that the agreement between plaintiff and defendant was in effect a power of attorney, constituting plaintiff defendant's agent, and that, in that capacity, he was bound to exercise the utmost good faith in executing the agency in the mode his principal expected and intended it should be carried out.

2. SAME.
   *Held*, further, that a stipulation in the contract between plaintiff and defendant that plaintiff did not guaranty the presentation of the orders for medicine was of no avail to plaintiff, since, though he did not guaranty the presentation of the orders, he was bound to do nothing to discourage their presentation, but to do what he could to secure it.

**3.** Contracts—Waiver of False Representations.

A stipulation in a contract that false or fraudulent representations by which one party has induced the other to enter into it shall not affect its validity is itself invalid, and cannot operate either by estoppel or otherwise.

**4.** Agent's Compensation—When Forfeited.

An agent who conceals from his principal the facts that his private interests conflict with his duties as agent, and who seeks to advance his own interests at the expense of his principal's, cannot recover commissions or compensation for his services as agent.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action brought by L. H. Allen, for whom John E. Moss, assignee, was substituted as plaintiff, against Joseph R. Hofflin and Albert D. Thompson, partners as Joseph R. Hofflin & Co., upon two contracts for procuring advertising for defendants. The circuit court sustained a demurrer to the defendants' answer, and directed a verdict for the plaintiff. Defendants bring error. Reversed.

The following is a copy of one of the two instruments on which this suit is founded:

"Town, Minneapolis.
"State, Minn.
"Date, Nov. 11th, 1892.

"Buffalo Newspaper Advertising Agency, L. H. Allen, Proprietor—Dear Sir: You are hereby authorized and employed to make contracts of the following form for the publication of our advertisement in any number of weekly newspapers, not exceeding one thousand, to wit, in the United States:

"(Form.)
" 'Exchange Plan' Advertising Contract.
"With the ———.
"Town, ———. State, ———.
"Date, ———, 189–.

"Buffalo Newspaper Advertising Agency—Gentlemen: In consideration of the order described on the reverse side hereof, and of premium offered, the undersigned hereby agrees to publish for and on your account the electrotyped advertisement of Jos. R. Hofflin & Co. in the above-named weekly newspaper, to occupy a space of four inches, single column, for a period of six months.   [Signed]       ———, Publisher.

"Such publisher's contracts, and signatures thereto, shall be accepted, for all purposes whatsoever, as genuine. On demand, you are authorized to issue a duebill order to the publisher of each newspaper, or order; and we agree to accept said orders, in the following manner, and not otherwise, to wit: when accompanied by $10 and 80/100 dollars in cash, as full payment for from one to three gross of Liebig's Corn Cure, small, the regular price of which is $36.00, to dealers $21.00. Goods to be packed and delivered f. o. b. cars in this city without extra charge. Said orders to be optional and valid for a period of one year only from date of issue. We further agree to pay you for your services the sum of two and 75/100 dollars for each contract made; said sum to be due and payable on delivery of contract and one copy of corresponding newspaper containing said advertisement. You are to furnish an electrotype of said advertisement to each newspaper, and to be responsible for premiums given publishers, and all other expenses involved in the carrying out of this contract, and above corresponding newspapers shall be deemed sufficient evidence of due performance thereof. It is understood that you do not guaranty the presentation of the above mentioned orders, and that no representation, understanding, or agreement not in this contract shall bind either party, unless in writing and signed by

both parties, as this is the complete agreement of the parties hereto. This agreement shall be and remain in force for a period of one year from date, and the Buffalo Newspaper Advertising Agency agree to furnish proof by affidavit of an average of 85 per cent. of insertions in the newspapers contracted with.                                                                    Jos. R. Hofflin & Co.

"Accepted:
     "Buffalo Newspaper Advertising Agency,
           "L. H. Allen, Proprietor,
                 "By C. N. Chisholm.
"Signed in duplicate."

The second instrument bears the same date, and is identical in every respect, with the foregoing, save in the name and price of the medicine to be advertised and sold; the second contract relating to "Japanese Pile Cure."

The complaint contained two paragraphs, and alleged that the plaintiff secured and delivered to the defendants 567 advertising contracts under one, and 559 under the other, contract with the defendants, and averred compliance therewith on his part in all respects, and asked judgment on one contract for $1,559.25, and on the other for $1,537.25. In their answer the defendants alleged, in substance: That at the time of the execution of the contracts the plaintiff, for the purpose of inducing the defendants to enter into the same, falsely and fraudulently represented that the reduction in the price of the medicines mentioned in the contracts was the sole and only consideration given or allowed, directly or indirectly, to publishers of the newspapers with whom the plaintiff was to place the advertisements, and that the plaintiff would not, directly or indirectly, allow to any of the publishers any additional price, premium, or consideration whatever for the inserting of the advertisements, and that the word "premium," used in the contracts referred to, meant simply the reduction in the price of the medicines. That, in violation of the contracts and his representations to the defendants, the plaintiff offered and gave to each publisher who inserted the advertisements other and additional consideration or premiums, in the shape or form of a lamp, type, printing materials, or other merchandise, and that the plaintiff, at the time of the making of the contracts, knew that the additional consideration or premium so offered and given by him would be the sole and only consideration which would induce any publisher to insert the advertisements, and that the reduction in price of the medicines would be in fact no part of the consideration for such insertions. That the plaintiff agreed with the defendants that the only consideration he would offer to the publishers of papers for the publication of advertisements would be the contract of the defendants to furnish to such publishers their medicines at the prices specified in the contracts; and the plaintiff further represented to the defendants that the publishers would in this manner not only advertise their remedies, but would, by the 'exchange plan,' place the same on sale at the very points or localities where they were being advertised, and that, from his large and varied experience in this method of advertising in all parts of the United States, he was able to state, to his knowledge, that such would be the necessary and inevitable result of such contracts in advertising,—all of which representations were false and fraudulent, and were known to the plaintiff to be so, and were made for the purpose of inducing the defendants to sign said contracts, and the defendants, relying on the truth of such representations, were thereby induced to sign said contracts. That the defendants have not had a single order for their medicines from any of the publishers of the advertisements, and have not, directly or indirectly, sold any medicine by reason of or on account of the advertisements. That, in sales at the prices fixed in the contracts for their medicines, there would have been a considerable net profit to them in the sale thereof to the publishers at the prices fixed in the contract, which profit is particularly stated. That the plaintiff agreed that he would act as the defendants' agent in placing the advertisements with the publishers of such weekly newspapers as would take and accept the same for the medicines mentioned at their reduced prices, whereas at the time of making the contracts the plaintiff owned and controlled the space in most, if not all, of the newspapers in which the advertisements were alleged by the plaintiff to have been

placed; and he did not act in good faith, as the agent of the defendants, in securing the advertisements to be accepted and published for the defendants' medicines, but was acting solely for himself, and was selling space which in fact belonged to himself. That the plaintiff fraudulently concealed from the defendants that he then owned and controlled the space in the newspapers, and that the reduction in price on the medicines would be no consideration for any of the contracts with the publishers, or any inducement whatever to them to insert the advertisements, and that in making the negotiations for the contracts, and in executing the same, and in pretending to carry out same as defendants' agent, the plaintiff acted in bad faith towards the defendants, for the purpose of deceiving and defrauding them for his own advantage and profit. The circuit court sustained a demurrer to the answer, and directed a verdict for the plaintiff for the amounts claimed, upon which judgment was rendered, and thereupon the defendants sued out this writ of error.

H. W. Young (W. A. Lancaster, on the brief), for plaintiffs in error.

C. J. Rockwood, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The instrument or contract sued on is, in legal effect, a power of attorney. It establishes between the parties thereto the relation of principal and agent. Allen is described as "proprietor" of the "Buffalo Newspaper Advertising Agency" and it is by this title he is addressed by the defendants, and "authorized and employed to make contracts" for them. He avers in his complaint that he "has been doing business under the style and description of 'Buffalo Newspaper Advertising Agency,'" and the answer alleges that he agreed to act as agent for the defendants in the premises, and the demurrer admits the truth of the averment. Assuming, as we must, that the averments of the answer, well pleaded, are true, the plaintiff, as agent for the defendants, for the consideration mentioned in his power of attorney, agreed that the only inducement or consideration offered or paid to the publishers of the newspapers in which he might procure the publication of the defendants' advertisements should be the medicines of the defendants, sold to them at the reduced rates specified in the contract.

The defendants had good reason to suppose that the proprietors of newspapers would not publish their advertisements for nothing, and that if they did publish them they would do so in consideration of getting the medicines at the reduced rates mentioned in the contracts. This reasonable belief, Allen assured them, was well founded, and that the necessary result of such contracts would be, not only to advertise their medicines, but to bring them into use in every locality where they were advertised, through the orders they would receive from the publishers of the papers publishing the advertisements. In view of the relation between Allen and the defendants, it was the duty of Allen, as their agent, to act in the utmost good faith towards his principals, and to do nothing to militate against their interests in this regard. It did not require any special agreement to impose this duty upon him. As the agent of the defendants, the law imposed it upon him. Accepting the averment of the answer as true, Allen

knew at the time he sought and procured the agency that no newspaper would publish the defendants' advertisements for the consideration mentioned in his power of attorney; that he did not intend or expect to ask them to do so, and in fact made no effort to do so; that he then himself owned the space in the newspapers in which he intended to insert the defendants' advertisements; that the advertisements were in fact inserted by him only in the papers in which he owned the space at the date of the contract, or in space which he purchased and paid for after the contract was made; and that the clause in the contract which was the chief, if not the only, consideration and inducement that led the defendants to enter into it, was inserted solely for the purpose of deceiving and misleading them. The moment that Allen accepted this agency for the defendants, the law bound him to the exercise of disinterested skill, diligence, and zeal in carrying out the agency. He was bound to act in the utmost good faith towards the defendants, and to execute the agency in the mode he knew his principals expected and intended it should be carried out, and with an eye single to their interests. Instead of so acting, it turns out, he was contracting for and with himself, and that his interests in the matter of the agency were directly inimical to those of his principals. An agent thus acting cannot recover commissions or compensation for his services. Fordyce v. Peper, 16 Fed. 516, and note.

The aspect of the case is not altered by the statement in the contract that "it is understood that we do not guaranty the presentation of the above-mentioned orders." The undoubted purpose of this clause was to shield Allen from the fraud which he then meditated, but it can have no such effect. While he did not guaranty the presentation of the orders for the medicines, he was under the highest obligation, imposed on him by law, to do nothing that would have a tendency to discourage their presentation, but, on the contrary, to do what he could to secure their presentation, by not paying or offering any consideration for the insertion of the advertisements other than the medicines at the reduced prices. He made their presentation impossible by himself buying and paying for the space occupied by the advertisements. And the clause in the contract "that no representation, understanding, or agreement not in this contract shall bind either party, unless in writing and signed by both parties, as this is the complete agreement of the parties hereto," is of no avail to the plaintiff. This clause, to the extent that it is valid, expresses no more than the law would imply without it. False and fraudulent representations made by one party to a contract, by which the other party is induced to enter into the contract, render it voidable, at the election of the defrauded party, and a stipulation in such a contract to the effect that the false and fraudulent representations by which the one party induced the other to enter into it shall not affect its validity is itself of no validity. No one can be estopped by anything contained in an instrument, which instrument was itself obtained from him by fraud and deceit. The law will not give effect to a stipulation intended to grant immunity to iniquity and fraud. In the case of Bridger v. Goldsmith, 38 N. E. 458, the court of appeals

of New York, discussing a somewhat similar provision in a contract, say:

"A mere device of the guilty party to a contract, intended to shield himself from the results of his own fraud practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on part of the plaintiff that, however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the transaction, or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. * * * Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule, but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would, in a short time, break down every barrier which the law has erected against fraudulent dealing."

See, to the same effect, Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62.

In the case of Allen v. Pierpont, 22 Fed. 582, upon a contract like the one here in suit, the court held the plaintiffs could not recover, upon the ground that they were agents, under the contract, and had not acted in good faith towards their principal; and their action was the same, in all respects, as the action of the plaintiff in this case. The judgment of the circuit court is reversed, and the cause remanded, with directions to grant a new trial.