HEWITT & HOSIER, Appellants, v. NORMAN LICHTY MFG. Co.

**Contracts of agency:** FRAUD: CONCEALMENT OF FACTS BY AGENT: EVIDENCE.    An agent is bound to disclose to his principal every material fact relating to the business intrusted to him.    In this action by advertising brokers for commissions it is held, that the giving of secret premiums by plaintiffs to procure the publication of defendant's advertisements, which were not contemplated by the contract with defendant, amounted to a breach of good faith and deprived defendant of the material advantage relied upon and inducing the contract, and that plaintiffs were therefore not entitled to recover commissions.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

TUESDAY, MAY 3, 1910.

PLAINTIFFS sue to recover commissions for acting as agents of defendant in procuring the insertion in one

hundred newspapers of advertisements of "Diners Digesters," a remedy for dyspepsia and indigestion manufactured by defendant, at the agreed commission of $3 for each newspaper in which the insertion of such advertisement was procured, and the additional sum of twenty cents each for electrotypes furnished to the publishers of such papers for insertion. The defendant admitted the making of the contract with plaintiffs for such commission, but denied its performance, and alleged fraud and concealment on the part of plaintiffs rendering the contract void. At the conclusion of the evidence offered on each side, the court on defendant's motion directed a verdict in its favor, and from judgment on this directed verdict plaintiffs appeal.—*Affirmed.*

*Dunshee & Haines,* for appellants.

*Read & Read,* for appellee.

McCLAIN, J.—The negotiations between the parties leading up to the contract for commissions on which plaintiffs sue commenced with the sending of a circular letter by plaintiffs to defendant exploiting a scheme *for securing the insertion in newspapers of advertisements of defendant's manufactures, to be paid for by duebills of defendant issued to the publishers of the newspapers inserting the advertisements, by which duebills the defendant should promise to deliver to the publishers for each advertisement specified quantities of defendant's manufactures for a cash price to be paid, which was much less than the price at which the article was offered on the market. The material parts of this circular were as follows:

We become a part and parcel of your business when you engage us, interesting ourselves in the making of actual sales—working in harmony and enthusiastically with your selling force. . . . The manufacturer is supposed

to offer each publisher a limited amount of goods for which the manufacturer agrees to accept as pay for same part cash and part advertising, the cash amount to be a sufficient sum to cover the cost of goods offered, and the difference between the cash amount charged and regular retail price of the goods to represent the six months' advertising. . . . It is an admitted fact that publishers are always anxious to procure additional advertising, but nowadays it is not an easy task for them to fill the columns of their papers with cash advertisements; consequently they are placed in a position where they look favorably on our duebill proposition which we will admit calls for some extra work on their part in trying to find a buyer for the goods offered. But through us they procure a lot of business that they wouldn't get in any other way. We know in many instances where publishers have made more money on our duebills than they received for the same amount of space payable in cash. The publisher makes the best kind of salesman, as he is acquainted with every dealer and individual in his section, and being backed by his paper, he has considerable influence that a traveling salesman does not possess. . .. . In order to introduce them [your goods] would you not be willing to offer a limited amount of such goods and agree to accept as pay part cash and part advertising? The cash amount that you name is supposed to be a sufficient sum to cover the cost of the goods offered, also our commission which we charge the manufacturer for our services. . . . The day is past for creating a demand for goods by newspaper advertising alone; by our duebill method the manufacturer has in addition to his advertising being inserted regularly for a term of six months the publisher acting the part of his representative and the goods offered for sale in the town which makes success assured, as they work hand in hand together. We attend to everything by taking upon our own shoulders all the labor and trouble involved. We design advertisements, and print the duebills. We mark, check, and attend to each advertisement during the period it runs, and keep records and papers at our office for inspection.

The defendant entered into correspondence with the

plaintiffs as the result of the receipt of this circular, and gave information on which the advertisements should be framed and the duebills drawn, and signed a contract by which it authorized plaintiffs to procure for it the insertion of advertisements in any number of country newspapers, not to exceed one hundred, for a period of six months, for which it agreed to pay to the publishers in duebills such as have already been described and to the plaintiffs for services and expenses a cash commission or fee of $3 for each paper in which plaintiffs procured the insertion of the advertisement, together with a contract (as per attached sheet) signed by each publisher. By this contract the defendant also authorized plaintiffs to furnish all necessary electrotypes, one for each paper, for which it agreed to pay twenty cents each. By express stipulation the specified fee or commission and the specified expense for electrotypes were together to constitute all the consideration which defendant was to pay plaintiffs for services, expenses, and electrotypes under the contract; the plaintiffs guaranteeing that defendant should have no liability to pay any further consideration than mentioned in the contract, and assuming full responsibility should any demands be made by any publisher in excess thereof, except only in the event that the defendant should refuse to issue, honor, or accept the duebills above described.

Within a few months after this contract was entered into, plaintiffs submitted to defendant, as they alleged, copies of one hundred papers in which defendant's advertisement was contained and contracts signed by the publishers of such papers, in which the publishers agreed to continue the advertisement of defendant according to the duebill plan, and demanded payment for their services and for expenses of electrotypes in the sum of $320. Although defendant denied in its answer the performance by plaintiffs of their obligations under the contract, there

was sufficient evidence to go to the jury in support of the allegation that the contract was performed and the amount claimed was due, unless plaintiffs were to be denied recovery on the ground of fraud and concealment as alleged in defendant's answer. The fraud and misrepresentation, if any, consisted in the fact that the publishers relied for their compensation, not upon the duebills issued to them which involved cash payments for defendant's manufactures at greatly reduced rates which the publishers should sell in order to realize a compensation for the insertion of the advertisements as well as a return of the money paid under the duebills, but upon certain premiums which plaintiffs admitted were, without the knowledge of defendant, and without any reference thereto in their circular or letters, offered to the publishers of papers in which advertisements were inserted in pursuance of their scheme. These premiums, according to the testimony for plaintiffs, consisted of fountain pens, numbering machines, clocks, lamps, etc., which cost them on an average not more than sixty-five cents for each advertisement, and which were not received by the publishers as payment for such advertisements, but for the purpose of having the publishers take proper care of the electrotypes furnished them for insertion and for their trouble and expense in sending to plaintiffs a copy of each issue of the paper containing said advertisement. One of the publishers, however, who inserted defendant's advertisement under a contract such as above described, testified that he was to receive for thirty advertisements similar to those contracted to be inserted for defendant a premium consisting of an Oliver typewriter, and that, while the consideration he received from defendant consisted of duebills, he had never used the duebills, but still had them on hand. It was shown, also, that at the time of the trial, which was more than a year after the duebills had been issued by the defendant to the various publishers of its advertisements, not a single

duebill had been returned to it for the purpose of procuring its manufactures at the reduced rate provided for in accordance with the scheme by which the publishers were to realize their compensation by taking defendant's manufactures at a greatly reduced cash price and realize the amount paid and the compensation for the advertisement out of the sale of such manufactures.

We think, therefore, that the evidence conclusively showed that the publishers inserted defendant's advertisements, not in consideration of the privilege which was given them under the duebills, but in part consideration at least of premiums or other inducements offered to them by plaintiffs without defendant's knowledge and not contemplated in the contract, and the only question which we have to determine is whether this fact showed fraud and concealment on the part of plaintiffs such as to defeat their right to recover their compensation.

It plainly appears that plaintiffs were the agents of defendant for the purpose of procuring advertising, and that they led the defendant to believe that under the duebill plan the publishers would be entirely dependent for payment for the advertisements upon selling defendant's manufactures, which they would have the privilege of buying at greatly reduced rates for cash. As a matter of fact, it was not the purpose of plaintiffs to procure the insertion of advertisements for defendant on this sole consideration; but their plan was to procure publishers to insert such advertisements at least for the part consideration of compensation to be given by way of premiums offered by plaintiffs, and the fact that no duebills were ever presented by publishers for defendant's advertisements would, as it seems to us, conclusively show that the consideration in fact relied upon by the publishers was the advantage of the premiums offered by plaintiffs.

The excuse given by the members of plaintiffs' firm, as witnesses, for offering premiums to secure the pres-

ervation of the electrotypes and the forwarding to plaintiffs of copies of each issue of the paper in which the advertisement appeared, was plainly a mere subterfuge. Plaintiffs had not obligated themselves as defendant's agents to care for the electrotypes procured at defendant's expense, nor to see to it that the advertisements appeared in the subsequent issues of the paper. These matters were covered by the contract between the publisher and the defendant which plaintiffs procured, and their entire duty in the matter had, according to their own theory, been discharged when they presented to the defendant a copy of the first issue of the paper containing the advertisement and the contract of the publisher to continue such advertisement for six months.

The arrangement which plaintiffs had with the publishers to give them premiums which should serve at least as part compensation—and we think it conclusively appears as sole compensation—for the insertion of the advertisements, was calculated to defeat the material inducement held out to defendant for entering into the arrangement, which was that they should be able to sell to the publishers at a reduced cash price quantities of their manufactures, which should be put on the market by the publishers and thus make known to the public the merits of such manufactures, and create a demand for them which would bring additional business to the defendant. It is clear, without further argument, that, in thus depriving the defendant of a material advantage relied upon by it, the plaintiffs acted in hostility to defendant's interests and were guilty of a fraudulent concealment. An agent owes to his principal the utmost good faith, and is bound to disclose to him every material fact relating to the conduct of the business intrusted to him.

The facts, as we find them on the record, bring the case clearly within the reasoning adopted in *Allen v. Pierpont* (C. C.), 22 Fed. 582, and *Hofflin v. Moss,* 67 Fed.

440 (14 C. C. A. 459), cases involving advertising schemes of substantially the same character as that proposed by plaintiffs to defendant. It is true that in those cases the decisions were upon demurrer to defendants' answers setting up fraud and concealment, but in the case before us there is no material evidence which would have justified a finding by the jury that fraud and concealment were not shown as alleged in the answer.

The judgment of the trial court is therefore *affirmed.*