### JONES et al. v. BANKERS' TRUST CO.

(District Court, D. New Mexico. November 8, 1916.)

No. 442.

1. CORPORATIONS ⬦80(1)—STOCK SUBSCRIPTIONS—CONTRACTS—CONSTRUCTION —"WARRANTY."

A provision in a contract of subscription to the stock of a corporation that no statement, representation, or agreement of warranty made by the agent taking the subscription should in any way operate to cancel or annul the contract, unless reduced to writing and incorporated therein, should be strictly construed, because intended to work an estoppel, and does not apply to oral fraudulent representations by the agent not amounting to warranties; 'a "warranty" being an undertaking or stipulation that a certain fact in relation to the subject of a contract is or shall be as it

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is stated or promised to be, and so the contract may be set aside for oral fraudulent representations by the agent, not amounting to warranties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 244.

For other definitions, see Words and Phrases, First and Second Series, Warranty.]

2. CORPORATIONS ☞80(1)—STOCK SUBSCRIPTIONS—FRAUDULENT REPRESENTATIONS—EFFECT OF.

A contract induced through fraud, deceit, and misrepresentations of the other party is not binding, and, as it is of no force, a stock subscription contract obtained by oral fraudulent representations may be set aside, notwithstanding it provided that no statement or representation of warranty by the agent taking the same should operate to cancel the contract, unless reduced to writing and incorporated therein.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 244.]

On petition for rehearing. Rehearing granted, and answer dismissed.

For former opinion, see 235 Fed. 649.

Powell & Neblett, of Silver City, N. M., for plaintiffs.

Towne Young, of Dallas, Tex., James Royall, of Silver City, N. M., and Barnes & Nicholas, of Socorro, N. M., for defendant.

POLLOCK, District Judge. The facts necessary to decision are as follows:

On May 12, 1914, plaintiffs subscribed for 2,000 shares of the capital stock of defendant corporation, agreeing to pay therefor $23,500. Five hundred dollars of the purchase price was presently paid in cash; the remainder evidenced by a promissory note for $18,000, due one year from date. In the sale of the shares defendant was represented by its duly created agents, W. T. Coleman and A. Murck. After the sale of the shares on September 8, 1915, this suit was instituted for the purpose of procuring a decree canceling and annulling the entire transaction on the ground of fraud, deceit, and misrepresentation practiced, made, and committed by the agents of defendant, as the result of which plaintiffs were induced to make the purchase of the shares from the defendant company. After motion of defendant to dismiss the petition for want of equity was denied by this court, and after the filing of an amended petition detailing the fraud and deceit practiced by the defendant's agents, which induced plaintiffs to purchase the shares, defendant answered, among other matters of defense, as follows:

"That on the said 12th day of May, 1914, defendant made and entered into a contract with plaintiffs which on the face of it is in words and figures, as follows:

" 'No. 1095

" 'Amount $23,000.00

" 'This is to certify that I hereby purchase 2,000 shares of the capital stock of the Bankers' Trust Company, for which I agree to pay twenty-three thousand and no/100 dollars.

" 'I further agree that no statement, representation or agreement of warranty made to me by the person taking this contract shall in any way oper-

ate to cancel or annul this contract unless the same be reduced to writing and filled in on the following line:

" 'A copy of the certificate of said stock is shown on the back hereof, and forms and constitutes a part of this contract as fully as if incorporated in the body hereof.

" 'The further consideration is that I will extend to Bankers' Trust Company the option to purchase above described stock should my stock be for sale.

" '[Signed]    R. L. Jones.

" 'J. T. Jones.' "

Defendant having thus pleaded this certificate or instrument of plaintiffs in hæc verba, and also a copy of the certificate of shares issued by defendant company, made a part of said instrument or certificate of plaintiffs by reference, further pleads in bar of this suit as follows:

"Defendant avers that said contract was read over to the plaintiffs and was fully understood and agreed to before and at the time the same was executed by the plaintiffs, and the said contract among other provisions contains the following expressed stipulation: 'I further agree that no statement, representation or agreement of warranty made to me by the person taking this contract shall in any way operate to cancel or annul this contract unless the same be reduced to writing and filled in on the following line.' Defendant further avers that no statement, representation, or agreement of warranty whatsoever was written in said contract, and particularly avers and alleges that none of the statements, representations, or agreements of warranty pleaded or relied upon by plaintiffs in this action were written into said contract or made a part thereof, and avers and alleges that plaintiff by the terms and provisions of said contract is estopped from pleading or relying upon any of the matters and things pleaded and relied upon by him as a defense to an action on said contract, or as statements, representations, agreements, or warranties to avoid said contract or change the provisions and terms of same," etc.

Plaintiffs, deeming this plea of estoppel in bar insufficient in point of law, in order to test its sufficiency, have moved to dismiss. This motion was presented to and denied by the presiding judge of this court in his lifetime, as shown by a written opinion found in the record. However, as the record further shows, on application of plaintiffs for a rehearing of this motion, the court, being in doubt as to the correctness of the ruling made, ordered the application filed and submitted on written briefs. In this manner and for this reason the matter stands again submitted for decision.

[1] As provisions in writing such as that here relied upon by defendant to work an estoppel and close the door to an inquiry into the very truth of the matter are contrary to natural justice, they are strictly construed as to their terms against the party pleading the estoppel. Looking, therefore, first at the language of the provision in this light, it is seen by its very terms to be limited to statements, representations, and agreements of *warranty* alone. That is to say, construing the certificate of purchase executed by plaintiffs above set forth as though it were either a contract to purchase the shares in view of a contract of purchase itself, it does not provide in broad general terms that no statement, representation, declaration, or agreement made by the agent of defendant company negotiating the sale shall be relied upon by the purchaser to work a cancellation of the contract of sale unless it be set forth in the writing signed. On the contrary, according to the very terms of the provision in question, it

is only such statements, representations, and agreements made by the agents negotiating the sale for the defendant company as are in their effect and true legal intent matters of *warranty* which will not avail plaintiffs to cancel or annul the writing unless written therein.

Now, the word "warranty" has a well-defined legal meaning. Thus Black, in the second edition of his Dictionary, defined the word "warranty" in a contract as follows:

"An undertaking or stipulation, in writing or verbally, that a certain fact in relation to the subject of a contract is or shall be as it is stated or promised to be."

Browne, in his work on Fraud, says:

"A warranty differs from a representation, in that a warranty must always be given contemporaneously with, and as part of, the contract; whereas a representation precedes and induces to the contract. And, while that is their difference in nature, their difference in consequence or effect is this: That upon breach of warranty (or false warranty) the contract remains binding, and damages only are recoverable for the breach; whereas, upon a false representation, the defrauded party may elect to avoid the contract, and recover the entire price paid."

In Rose v. Hurley, 39 Ind. 81, it is said:

"The same transaction cannot be characterized as a warranty and a fraud at the same time. A warranty rests upon contract, while fraud or fraudulent representations have no element of contract in them, but are essentially a tort. When judges or law writers speak of a fraudulent warranty, the language is neither accurate nor perspicuous. If there is a breach of warranty, it cannot be said that the warranty was fraudulent, with any more propriety than any other contract can be said to have been fraudulent because there has been a breach of it. On the other hand, to speak of a false representation as a contract or warranty, or as tending to prove a contract or warranty, is a perversion of language and of correct ideas."

So construed, an examination of the petition will disclose the alleged fraudulent misrepresentations of defendant's agents making the sale of the shares of the plaintiffs are not in any sense warranties or statements of warranty, but are merely statements and representations of material existing facts made by the agents for the purpose of inducing plaintiffs to purchase the shares, which statements, representations of material existing facts, plaintiffs now plead and insist were false and untrue when made, and known to be so by the defendant and its agents making them.

Again, the provision of the certificate relied upon by defendant to work out the estoppel or bar pleaded to the further prosecution of this suit apparently has been heretofore regarded, and is now relied on, by defendant to be a mere limitation upon the power or authority of the agents of defendant to bind defendant by the representations and statements made inducing the contract, and on such ground is highly eulogized and commended by solicitors for defendant company in their briefs and argument. However a simple statement of the matter will disclose such is not the true intent nor the purpose to be subserved by the provision in question, for the provision is not to the effect that agents of the defendant company have no power to bind it to the truth of any statement, declaration, or representation of fact by them

made to induce a purchase of the shares, or to the effect that said agents have no power or authority to bind defendant company by any material statement or representation of fact stated or represented as a fact, or which may in the future prove to be untrue; but the provision is to the effect that only such statements, representations and agreements of warranty as the agent may make, as are written in the certificate, may be relied upon by the purchaser to cancel or annul· the trade certified. Thus, impliedly, the agent of defendant company had full and complete power and authority to bind defendant by any statement or representation made within the scope, or apparent scope, of the business transacted, only that such representations, statements, and agreements made by the agents to induce the contract which were written in the certificate could be relied upon to cancel or annul the trade; if not so written therein, to be inoperative for such purpose. Thus viewed, it is apparent the unmistakable intent and purpose of the provision under consideration was to close the doors of inquiry by the courts into the fraudulent conduct of defendant's agents, unless the purchaser should, being of a suspicious nature, insist upon all the matters and things by the defendant's agents stated or done to induce the making of the contract being written into the certificate before the falsity thereof could be shown. Such holding would operate to place on the fraudulent conduct of agents such a handsome reward as has not to this day been sustained by the law.

[2] Again, where one party to a trade has been induced to enter into it through the fraud, deceit, and misrepresentations of the other party, in material matters, no binding trade results, and the defrauded party does not become bound by its terms. As to him the apparently completed transaction remains as though it had never existed. Such party is bound neither to its provisions nor by the principles of the law applicable to valid transactions of such nature. I am therefore of the opinion plaintiffs must in this suit be permitted to plead, and, if capable, to show, in so far as they are concerned, the trade for the shares sought to be repudiated, having been induced by defendant company through the fraud of its agents, does not as a whole or in any part or provision thereof bind plaintiffs to its performance. As having a bearing upon the conclusion reached, see Hofflin v. Moss (Circuit Court of Appeals for this Circuit) 67 Fed. 440, 14 C. C. A. 459, and cases therein cited; Bridger v. Goldsmith, 143 N. Y. 424, 38 N. E. 458; Pratt v. Darling, 125 Wis. 93, 103 N. W. 229; Shepard v. Pabst, 149 Wis. 35, 135 N. W. 159; Bonewell v. Jacobson, 130 Iowa, 170, 106 N. W. 614, 5 L. R. A. (N. S.) 436; and many other cases.

It follows the application for a rehearing must be, and is, granted, and those paragraphs of the defendant's answer to the amended petition relied upon to work an estoppel, or in bar of the further prosecution of this suit must be, and are, held insufficient for such purpose, and, in so far as relied upon to constitute an estoppel or any bar to the further prosecution of this suit, is dismissed therefrom, as contrary to good conscience and fair dealing between man and man.

It is so ordered.