CHRISTIAN A. SCHMIDT, Plaintiff, *v.* THE GARFIELD NATIONAL BANK, Defendant.

*Principal and agent — action for conversion — demand — authority of a clerk to indorse checks — estoppel of principal — representations — negligence — credibility of plaintiff.*

Christian A. Schmidt, a New York merchant, who traveled somewhat in conducting his business affairs, left, in his absence, one McLane in charge of his business, who had authority to indorse checks and drafts for deposit. Schmidt kept his account in the Chemical National Bank, and had a stamp which read, "For deposit in the Chemical National bank to the credit of ..............," which it was his custom to use in indorsing paper for deposit, and to place his signature under this indorsement.

An employee, named Lingard, also had authority to use this stamp, sign Schmidt's name under it, and deposit checks and drafts in said bank. Lingard, during Schmidt's absence, indorsed a large amount of paper, "C. A. Schmidt, Geo. Lingard," not using the stamp, and deposited the paper to his own credit in the Garfield National Bank, from which he afterwards drew out the proceeds and converted them to his own use.

In an action brought by Schmidt against the Garfield National Bank to recover the amount of such checks and drafts:

*Held,* that he could recover.

That, under a complaint which alleged that the defendant, without the authority of the plaintiff, obtained possession of the checks and drafts, Schmidt might show that his signature was forged or placed thereon without authority.

That where the complaint alleged such unauthorized possession and a wrongful conversion it need not allege a demand.

That authority to Lingard to use the stamp, with the restrictive indorsement for deposit in the Chemical National Bank, conferred no authority upon him to deposit the checks and drafts, indorsed as stated, in another bank to his own credit.

That, upon the question of authority, there was nothing to submit to the jury, as there was nothing to show that Lingard was the authorized recipient of the checks or their proceeds, and that the evidence showed the contrary to be the fact.

That as Lingard had no general power to indorse, his authority did not depend upon a fact, outside of the terms of the power, particularly within his knowledge, and, therefore, although false, binding on Schmidt by reason of Lingard's representations in respect thereto.

That as the plaintiff had never made to the defendant any representation whatever as to Lingard's authority the defendant took the paper at its peril.

That Schmidt was not guilty of any negligence, in failing to exercise a proper supervision over Lingard's acts, which would work an estoppel.

That as the jury could not have found that Lingard had authority to indorse and deposit the paper with the defendant, it was not error for the court to refuse to submit to it the question of Schmidt's credibility.

Exceptions of the defendant, the Garfield National Bank, directed to be heard in the first instance at General Term, taken upon a trial had at the New York Circuit before the court and a jury, at which the plaintiff recovered a verdict for $11,528.26.

The motion at the General Term was for a new trial upon a case and exceptions.

*S. Hanford,* for the plaintiff.

*John J. Adams,* for the defendant.

Andrews, J.

The complaint in this action alleged, in substance, that the plaintiff was the owner and entitled to the possession of 171 bank checks and drafts, described in a schedule annexed to the complaint, of the aggregate value of $10,221.39; that the defendant, without the authority of the plaintiff, obtained possession of said checks and drafts and wrongfully disposed of and converted the same to its own use; and demanded judgment against the defendant for the sum of $10,221.39, with interest on the several amounts of the said checks and drafts from the days of the dates thereof, respectively. The answer was a general denial. Upon the trial several witnesses were called on behalf of the plaintiff, and one witness was called on behalf of the defendant. At the close of the testimony, on motion of plaintiff's counsel, the court directed a verdict for the plaintiff for the full amount claimed, and that the exceptions taken during the trial, and the defendant's exception to the direction of the court for a verdict in plaintiff's favor, should be heard in the first instance at the General Term.

At the commencement of the trial at circuit, defendant's counsel moved to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action. This motion was denied and defendant's counsel excepted. It is now claimed that this exception, as well as exceptions to the rulings of the court, admitting evidence to prove the forgery of the plaintiff's indorsements of said checks and drafts, were well taken.

We are unable to agree with the learned counsel for the defendant, and are of the opinion that the complaint was sufficient and

that such evidence was properly admitted. The complaint alleged that the defendant, without the authority of the plaintiff, obtained possession of the checks and drafts; and if this statement, as to the manner in which the defendant obtained the checks and drafts, was regarded by defendant's counsel as indefinite and uncertain, because it did not sufficiently appraise the defendant as to what was meant by the expression "without the authority of the plaintiff," he should have moved to make the complaint more definite and certain. The complaint certainly states a good cause of action, and evidence that the plaintiff's name was forged, or was indorsed upon the checks and drafts without his authority, was certainly admissible.

It is also objected that a demand should have been alleged in the complaint. But such allegation was unnecessary, inasmuch as it was alleged that the defendant, having obtained possession of the checks and drafts without the authority of the plaintiff, had wrongfully disposed of and converted them to its own use. (*Saratoga Gas and Electric-Light Company* v. *Hazard*, 55 Hun, 251; *Pease* v. *Smith*, 61 N. Y., 481; *Lafayette Co. Bank* v. *Metcalf, Moore and Co.*, 40 Mo. App., 502.)

It is also claimed on behalf of the defendant that the ruling of the court below in directing a verdict for the plaintiff was erroneous upon the following grounds:

*First.* That the checks in respect of which this suit is brought were indorsed by authority of the plaintiff.

*Second.* Lingard, the plaintiff's employee, was the authorized recipient of the checks and proceeds thereof.

*Third.* The plaintiff's conduct estops him from denying either of the first two propositions.

*Fourth.* The credibility of the plaintiff as a witness in his own behalf should have been left to the jury.

The following facts are undisputed: The plaintiff carried on business in the city of New York for a long period as a manufacturer of upholstery and drapery trimming. He traveled upon his own business, and was absent from the city in 1889, from June eighth until July eighth, and in 1890, from April twenty-sixth until June third. When he was at home he took personal charge of the affairs of the office, receiving all letters, including those containing checks.

His letters were brought upstairs to his office, from the letter-box down stairs, by one of the clerks. He opened the letters, took out the checks, entered them in a check-book, and stamped them, " For deposit in the Chemical National Bank to the credit of ————," and placed his signature under this stamping ; he then caused the checks to be deposited in the Chemical National Bank. During the plaintiff's absence on the occasions above mentioned and others, checks were received at the plaintiff's place of business drawn to his order. The checks and drafts in suit were received during the periods above mentioned, in the year 1889 and 1890, while the plaintiff was absent from the city or from his office, and all such checks and drafts were indorsed as follows : " C. A. Schmidt, Geo. Lingard."

Such indorsements were made by one George Lingard, who was a bookkeeper employed by the plaintiff, and who deposited all of said checks in the defendant bank. The defendant bank thereupon collected all such checks, and placed the proceeds to the credit of said Lingard, who subsequently drew out the same and appropriated them to his own use.

The contention of the defendant's counsel, as we understand it, is, that the above-recited facts, which are not in dispute, taken in connection with certain testimony given upon the trial, show that Lingard had authority to indorse the checks and drafts in suit, and, consequently, that Lingard's culpability did not lie in the fact that he indorsed the checks and drafts, but that he misappropriated the proceeds thereof ; that his indorsement was not a forgery, and, therefore, that the defendant was not liable to the plaintiff, because Lingard, having indorsed the checks and drafts, subsequently misappropriated the proceeds.

We have examined the record with care, but we do not think that the testimony in the case supports such claim of defendant's counsel. There is some testimony in the case which tends to prove that Lingard did have authority to use the stamp above mentioned, and to write the plaintiff's name below the stamping upon the checks and drafts, for the purpose of depositing the same in the Chemical National Bank, to the credit of the plaintiff. The plaintiff swore that when he was absent one McLane had charge of his business, and had authority to indorse checks and drafts for deposit.

When first interrogated by defendant's counsel he said that when he went away he did not leave anybody authority to indorse checks; but his subsequent testimony showed that he intended by this to state that he did not, *upon each occasion* when he went away, leave express authority to indorse checks. He was asked these questions:

" Q. And did you suppose, as a business man, that your book-keeper would hold those checks from the time you left the city until your return without indorsing them ? A. No, sir.

" Q. What did you suppose? A. I supposed Mr. McLane would attend to my business as he had done in the twenty years there; perhaps, in the twenty years.

" Q. What did you suppose would have been done with the checks? A. Deposited in the Chemical National Bank to the credit of my account."

The plaintiff also testified that Lingard did not have authority from him to indorse his name upon checks and drafts. It appeared, however, that during the plaintiff's absence from the city Lingard had indorsed the plaintiff's name upon some 207 checks, which were deposited in the Chemical National Bank, and that the plaintiff never raised any question as to the right of Lingard to make such indorsements. It also appeared that, in point of fact, McLane did not indorse any checks for deposit during the plaintiff's absence, but that Lingard did the indorsing. It also appeared that on July 31, 1890, plaintiff had an interview with the president of the defendant, and that on August 1, 1890, he made a written memorandum of the conversation between himself and Cheney. This memorandum was put in evidence upon the trial; it contained, among other things, the following:

" Whoever prepared the deposits, either Mr. McLane or Mr. Lingard, signed for deposit in the Chemical National Bank. They had to use my regular deposit stamp, ' For deposit with the Chemical National Bank to the credit of ; ' and the one preparing the deposit should have written under the deposit stamp my name in his usual handwriting, writing under it his special initials. No special authority had been given to either of them for it."

As above stated, this testimony, and some other testimony given upon the trial, did tend to prove that Lingard had authority to use the stamp and to sign the plaintiff's name under the stamping upon

the checks and drafts; adding his own initials, thereto, and thereupon to cause the checks and drafts bearing such restricted indorsement to be deposited in the Chemical National Bank, to the credit of the plaintiff. But such authority gave Lingard no right to indorse the plaintiff's name, except in connection with a restricted indorsement made by stamping the checks and drafts with the stamp provided for that purpose by the plaintiff; nor did it confer the slightest right upon Lingard to deposit the checks, when indorsed, to the credit of his own account in the Garfield National Bank. Assuming that he had authority to use the stamp and sign the plaintiff's name in connection with the use thereof, and then cause the checks and drafts to be deposited to the plaintiff's account in the Chemical Bank, his action in indorsing the checks with the plaintiff's name without using the stamp, and depositing such checks and drafts to his own account in the Garfield National Bank, was absolutely without any authority or justification whatever. There was, therefore, not only no testimony which would justify the court in holding that Lingard had authority to indorse the checks and drafts in the manner in which he did, but there was no conflict in the testimony which required the court to submit, or would have justified it in submitting, the question to the jury, as to whether Lingard had authority to indorse the checks in the manner in which he did.

The second ground upon which defendant's counsel claims that the court erred in directing a verdict for the plaintiff is, that Lingard, the plaintiff's employee, was the authorized recipient of the checks and the proceeds thereof. We are not quite certain that we understand the argument of defendant's counsel under this head, but we suppose that the gist of it is contained in the following paragraph :

" But we contend that the evidence establishes that the plaintiff reposed absolute confidence in Lingard; that, in view of all the circumstances, the defendant was well warranted in cashing checks indorsed by the latter in the name of his employer, for was he not the authorized recipient during his employer's absence of all remittances ? ".

There is not a scintilla of evidence in the case which tends to prove that Lingard was the authorized recipient of the proceeds of checks

received during the plaintiff's absence. As above stated, there is some evidence tending to show that he did have authority to use the stamp above mentioned, and place a restricted indorsement upon the checks, and then to deposit them to the plaintiff's account in the Chemical Bank; but there is no evidence that he had any authority whatever to present the checks at the Chemical Bank, or any other bank, for payment, or to receive the proceeds of such checks in cash; and if some officer of the defendant bank had taken the trouble to go, or to send to plaintiff's place of business, and make inquiry of McLane, who had been left in charge of plaintiff's affairs, he would undoubtedly have ascertained that Lingard had no such authority. It does not appear by the evidence that any such inquiry was made; but if inquiry had been made, and the defendant's officers had been informed that Lingard did have authority, or at any rate exercised the authority, to open letters addressed to plaintiff, and to place a restricted indorsement upon the checks, for the purpose of having the same deposited in the Chemical National Bank, we are at loss to understand how the knowledge of these facts would have justified the defendant bank in cashing the checks deposited with it by Lingard.

The third ground upon which it is claimed that the ruling of the court directing a verdict for the plaintiff was erroneous is, that the plaintiff's conduct estops him from recovering in this action, because, first, the alleged restriction upon the authority conferred upon Lingard to indorse the checks was not within defendant's knowledge, and did not appear upon the checks themselves; secondly, the plaintiff is estopped by his negligence.

Defendant's counsel states that the principle upon which the first proposition involved in this point is based is stated by Selden, J., in *New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 68) as follows: "Where the authority of an agent depends upon some fact outside the terms of his power, and which from its nature rests particularly within his knowledge, the principal is bound by the representation of the agent, although false, as to the existence of such fact."

Defendant's counsel also states that the same principle is stated in another form in *Griswold* v. *Haven* (25 N. Y., 598), as follows: "The principal is responsible for a false representation by his agent

not authorized by or known to the principal, if such representation is made in connection with an act which the principal has authorized." Counsel then applies this principle to the case at bar in the following manner :

" Lingard had authority to indorse the plaintiff's checks. The defendant was warranted in resting there without taking pains to ascertain whether or not the authority was in any manner restricted; the act of indorsing being authorized, the plaintiff was bound by his agent's unauthorized act in collecting the check so authoritatively indorsed."

The fallacy of this argument is that it is based upon an assumption, which is not warranted by the evidence given upon the trial, viz.; that Lingard had authority to indorse the plaintiff's checks. As already shown, there is no evidence whatever that Lingard had a general authority to indorse checks. If he had any authority at all, it was merely by the use of the stamp to indorse the checks for deposit in the Chemical Bank, and then write the plaintiff's name under such indorsement. The authority of Lingard to collect the proceeds of the checks did not depend upon any fact outside the terms of his power, because he had no general power to indorse; and the plaintiff was no more bound by Lingard's representation that he had authority to collect the proceeds than he was by Lingard's representation that he had authority to indorse generally; nor was Lingard's representation, to the effect that he had authority to collect the proceeds of the checks made in connection with an act which the plaintiff had authorized, because the plaintiff had never authorized him to indorse the checks in the manner in which he did. The checks and drafts were all drawn payable to the order of the plaintiff; and when deposited by Lingard in the defendant bank, they were indorsed with the names of the plaintiff and of Lingard, in Lingard's handwriting. The officers of the bank, therefore, knew that the plaintiff's name had not been indorsed upon the checks and drafts by the plaintiff, but had been indorsed by Lingard. In receiving the checks and paying the proceeds thereof to Lingard the officers of the bank acted at their peril; they knew that Lingard had indorsed the checks with the plaintiff's name, and, unless they were satisfied to take the risk of paying the proceeds to Lingard, they were bound to make inquiry

as to the extent of his authority. The fact that the plaintiff was absent from the city, as suggested by defendant's counsel, can make no difference. As above suggested, McLane was left in charge of plaintiff's affairs, and if the officers of the defendant bank had made inquiry of him, they would doubtless have discovered at once that Lingard had no authority to indorse the checks in the manner he did, and collect the proceeds for his own use through the defendant bank. Moreover, as the plaintiff himself had made no representation whatever to the bank as to Lingard's authority, even if such information could not have been obtained from McLane, the bank could not, with safety, have received the checks on deposit, and paid the proceeds to Lingard, until it had ascertained from the plaintiff, or some one authorized to speak for him, what Lingard's authority was in the premises.

With regard to the second proposition, that the plaintiff is estopped by his negligence, we are of opinion that the learned counsel for the defendant misapprehends the law upon this subject. His argument appears to be that if the plaintiff had exercised a proper supervision over the acts of Lingard, the latter would not have been able to perpetrate the frauds which he did, and that, therefore, the plaintiff was " the author of his own misfortune," and should be estopped to deny the authority of Lingard to do the acts which caused the misfortune.

The best answer to this proposition is to be found in the opinion of EARL, J., delivered in the case of the *People* v. *Bank of North America* (75 N. Y., 561), and is as follows :

" The referee found that the acts of Phelps in indorsing and diverting from their proper use the drafts in suit were such that the exercise of ordinary care on the part of the treasurer would have discovered and prevented them, and upon this finding the defendant seeks to base an estoppel against the plaintiffs. It certainly is not a general rule of law that a person can be deprived of his property by an unauthorized transfer thereof, simply because he has not exercised ordinary care to prevent such transfer. I may carelessly intrust a dishonest person with my personal property, and thus put it in his power to sell it ; and yet it has never been held that, in such case, my carelessness will deprive me of the right to reclaim my property, the person thus intrusted having neither the real nor

apparent power to sell it.    I may place my unindorsed bills in the hands of an agent, and thus place it in his power to forge an indorsement; and yet the indorsement would not bind me.    The principle that when one of two persons, equally innocent, must suffer a loss by the act of a third person, he shall bear the loss who placed it in the power of such third person to perpetrate the act, does not apply to such cases.    Where it is said in the books that one is estopped by his negligence as to the acts of another who has assumed to act for him, or to deal in his property, the neligence meant is that of permitting such other person to clothe himself, or to be clothed, with apparent authority to act, and then the person who has been induced to rely and act upon the appearances can invoke the estoppel; and such was the case of *The New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 30) in which the doctrine of estoppel by negligence is more fully discussed than in any other case.    Here there was no negligence of Raines in clothing Phelps with apparent authority to indorse, or in causing or permitting any appearances which caused the defendant to rely upon the indorsements.    The negligence alleged is simply that Raines did not use ordinary care to discover and prevent the frauds of Phelps; and there is no authority for holding that such negligence can work an estoppel.    If it could, merchants, bankers and other business men, having numerous clerks, would frequently hold their property by a precarious tenure."

The last ground upon which it is claimed that the ruling of the court in directing a verdict for the plaintiff is erroneous is, that the credibility of the plaintiff as a witness in his own behalf should have been left to the jury.

There was no occasion to submit the question of the credibility of the plaintiff to the jury, because, as has already been shown, there was no view of the evidence given by the plaintiff, or by the other witnesses in the case, under which the jury could possibly have found that Lingard had authority to indorse the checks in the manner in which he did, and to deposit the same to his own account with the defendant bank.    The most that can be said about the testimony is that a jury might possibly have found that Lingard did have authority to use the stamp, and write the plaintiff's name under the stamping upon the checks and drafts, for the purpose of depositing the same

in the Chemical National Bank; but if the views hereinbefore expressed are correct, such a finding by the jury would not have justified a verdict for the defendant.

Various exceptions were taken during the trial to the admission and exclusion of evidence, but none of them appears to us to have been well taken.

The judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.