DANIEL McINTOSH, Appellant, *v.* MICHAEL BATTEL, CATHERINE BATTEL and MARIA McELROY, Respondents.

*Contract to sell real estate, claimed to have been made by the agent of the vendor — specific performance — proof of agency — ratification.*

To entitle a vendee to specific performance of a contract to sell real estate alleged to have been made by the agent of the vendor, the proof of agency must be clear, certain and specific, or a subsequent ratification by the vendor must be shown.

A vendee who takes a contract for the sale of real estate, executed by a third party purporting to act as agent for the vendor, has no right to assume that such third party has any authority to sign on behalf of the vendor a contract which contains conditions which, to the knowledge of the person taking the contract, are contrary to the vendor's expressed wish.

Negligence of a principal in failing to discover and prevent an agent's unauthorized and fraudulent acts does not estop the principal from disavowing such acts.

APPEAL by the plaintiff, Daniel McIntosh, from a judgment of the Supreme Court, entered in the Erie county clerk's office June 14, 1892, on a decision rendered at the Erie Special Term, dismissing the plaintiff's complaint, without costs.

*Baker, Schwartz & Dake,* for the appellant.

*Frank R. Perkins,* for the respondents Battel.

*John T. Gardner,* for the respondent McElroy.

MACOMBER, J.:

This action was brought to compel the specific performance of a contract, alleged to have been entered into between the plaintiff and the defendants, Maria McElroy and Michael Battel, January 27, 1892, for the conveyance to the plaintiff of a farm of sixty acres of land in

Cheektowaga, Erie county, at the agreed price of $12,000, to be paid partly in cash, and the balance by the assumption of mortgages.

The alleged contract was made by one James McElroy, the husband of the defendant, Maria McElroy, who assumed to act as agent of all the defendants. The plaintiff's counsel filed exceptions only to the refusal of the court to find upon certain questions of fact, which he had requested, as follows: That James McElroy was authorized to execute the contract on which this action is brought, and that the defendants ratified the contract which James McElroy assumed to have executed as their agent.

The land in question was owned in common by the defendants, Maria McElroy and Michael Battel, and was incumbered, to the amount of $6,400, by two mortgages. The other defendant is the wife of Michael Battel. Two contracts were executed by James McElroy, the first providing for the sale of this property to the plaintiff for the sum of $12,000, the vendee to assume the two mortgages; this was signed as follows: "James McElroy, agent for Michael Battel and Catherine Battel and Maria McElroy."

By the second contract, the defendant, Maria McElroy, was to take a lot on Main street, in the city of Buffalo, owned by the plaintiff, at the value of $2,200, as part payment of her share from the sale of the Cheektowaga farm. This contract was signed as follows: "James McElroy, agent for Maria McElroy."

These contracts, which were executed at the same time, without the knowledge of the defendants, were made after several conversations had between the plaintiff and the defendants and James McElroy; but nothing took place between the parties from which the plaintiff had a right to assume that James McElroy was authorized to execute these contracts. To entitle plaintiff to specific performance of a contract to sell real estate alleged to have been made by the agent of the vendor, the proof of agency must be clear, certain and specific. In this case, the plaintiff has failed to show that James McElroy had either authority or a clear and unequivocal appointment as agent, and on this ground [if it appears that there was no subsequent ratification of his unauthorized act] the finding of the learned justice at Special Term must be affirmed.

While the defendants were anxious to sell their farm, they were

unwilling to receive other real estate in exchange. In fact, the refusal of the defendants to consent to that portion of the contract relating to the Main street lot was well known to the plaintiff, and he had no right to assume that James McElroy had any authority for signing contracts over the heads of these defendants, which contained conditions contrary to their expressed wish, the import of which he well knew.

On the trial, Michael Battel testified that he never told Mr. McIntosh that he would accept the Main street lot, but told him that he would not; that he never authorized James McElroy to make any contracts for him; that he was living not three blocks from McIntosh's house, and thought that he had sufficient time to go and sign those papers himself, without asking McElroy to sign them for him. And Mrs. McElroy says: "I told him (McIntosh) that I did not let Mr. McElroy sell my property; Mr. McElroy never sold any of my property, for I would not let him; he never bought any real estate for me; I never gave him any instruction or any authority to sell this Cheektowaga property, or to take the Main street property, because when I sold that farm I intended to get the money for it to help me out of the difficulty I was in."

From this and other testimony, it is clear that James McElroy was unauthorized to sign these contracts.

As regards the refusal to accept the contracts by the defendants, but little need be said. It was evident that they were ready and willing to sell the farm, but such sale must be for cash. As soon as the plaintiff sought their signatures to the deed, under the alleged agreement, they immediately repudiated the authority of James McElroy, and then and there refused to ratify the contracts. No part of the $100 paid by the plaintiff to James McElroy has ever come to the hands of the defendants.

As the contracts were made on the twenty-seventh of January, Wednesday, it was not more than two days subsequent when the refusal was made, and James McElroy, in the meantime, having left for parts unknown, without fully explaining his action, the defendants cannot be held responsible for negligence in refusing to ratify the contracts, under the rule contended for by the appellant, that after a party fails to disavow the acts of a person assuming to act as his agent, as soon as he can after they come to his knowledge, he

makes these acts his own. But the defendants are upheld by the case of *Schmidt* v. *Garfield National Bank* (64 Hun, 298), where it is held that negligence of a principal in failing to discover and prevent an agent's unauthorized fraudulent acts, does not estop the former from disavowing such acts.

Though the appellant's counsel in an elaborate course of reasoning, gives a suspicious aspect to the apparent contradictions in the testimony of Mrs. McElroy, tending to show that her reason for refusing to ratify the alleged contracts was because she had heard that the price of land in that neighborhood was likely to rise, and that, in fact, she soon after sold this farm for $30,000, yet, upon the testimony as presented, we see no reason to interfere with the decision of the trial court on that ground. She repudiated the contract executed by James McElroy at the first opportunity, and it was ten or twelve days after this before the negotiations for the sale at the larger price were had.

For these reasons we think that the trial court committed no error in his refusals to find as requested by the plaintiff's counsel. His contention that such refusals were against the weight of the evidence, is not substantiated by the testimony. Therefore, the judgment appealed from should be affirmed.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment appealed from affirmed with costs.