STRAND v. GRIFFITH et al.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1899.)

No. 1,238.

1. SALE—FALSE REPRESENTATIONS—STATEMENTS AS TO QUALITY AND VALUE.

The rule that the value and quality of goods sold are matters of opinion, and that representations made by the seller relating thereto cannot be made the basis of an action for fraud, does not apply when such representations are as to matters of fact; as where old and shopworn goods were represented as new, and a false invoice was shown the purchaser, which was represented as truthfully showing the wholesale value of the goods in the market.

2. SAME — FRAUDULENT PRACTICES — INDUCING PURCHASE WITHOUT EXAMINATION.

A seller who practices fraud and deceit to induce the purchaser to accept goods without examination, which he would otherwise have made, will not be heard to say, in defense to an action for fraudulent representations, that the plaintiff was cheated as the result of his own negligence and credulity, and is, therefore, without remedy.

3. SAME—ACTION FOR FRAUD—ESTOPPEL BY WRITTEN CONTRACT.

A provision in a written contract, signed by the purchaser of a stock of goods, stating that he had fully examined the goods (which was untrue), and that he accepted the same, "waiving all claim for damaged goods, shortages and prices," etc., cannot avail the seller as an estoppel of the purchaser to claim damages for fraudulent representations made in the sale, where the contract itself was procured by fraud, and for the purpose of protecting the seller against such an action.

In Error to the Circuit Court of the United States for the District of Minnesota.

Henry J. Gjertsen, for plaintiff in error.

M. A. Spooner, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. Hans B. Strand, the plaintiff in error, brought this action against Joseph M. Griffith, Cyrus A. Campbell, and Edwin L. Buck, the defendants in error, to recover damages for alleged fraud and imposition practiced upon him in the sale, by

the defendants to him, of a stock of dry goods. The defendants demurred to the complaint upon "the ground that the same does not state facts sufficient to constitute a cause of action." The court sustained the demurrer, and rendered a final judgment for the defendants, and the plaintiff sued out this writ of error. The demurrer necessarily admits the truth of all the allegations of the complaint, which were well pleaded. It would serve no useful purpose to set out these allegations at length. They comprise 19 pages of the printed record, and are set out with technical accuracy and formality. It is sufficient to say that the complaint avers that prior to this transaction the plaintiff had been engaged in operating a sawmill, and had had no experience in the mercantile business, and knew very little about dry goods; that the defendants, knowing these facts, and that the plaintiff was contemplating the purchase of a stock of goods, entered into a conspiracy to defraud him by inducing him to purchase an old and comparatively worthless stock of goods at ten times their value, and that the conspiracy was carried out and consummated by a series of gross frauds, false representations, and fraudulent devices and practices, which are set out at length and with particularity, and show a succession of frauds and deceits of the grossest character. Among other things, it is averred that the defendants falsely represented the goods to be new and fresh, when in fact, as they well knew, they were old, shopworn, and moth-eaten, and but remnants of old stocks, which they had themselves gathered up for the very purpose of putting them off on the plaintiff as new goods, and at the price of new goods; and for the purpose of carrying out their fraudulent scheme, and preventing the plaintiff from detecting the fraud, they made out and presented to him a false and fraudulent invoice of the goods, and put a layer of new and fresh goods on the top of the boxes containing the old goods, and by various false pretexts, cunning devices, and artful deceptions, which are fully set out in the complaint, induced the plaintiff to believe their invoice was true, and that it was unnecessary for him to examine the goods in the boxes; that they were new, and all like the goods he saw on the top of the boxes, and worth $11,000 at wholesale prices, as shown by the invoice, when in truth and in fact they were old, moth-eaten, and shopworn goods, not worth one-tenth of that sum, as the defendants well knew. This is but a brief summary of some of the averments of the complainant. When a defendant chooses to attack such a complaint by a general demurrer, he not only admits the truth of the averments of the complaint, but every inference and deduction which a jury can fairly draw from the facts set out the court must draw in support of the complaint. It is not seriously contended that the representations made by the defendants to the plaintiff touching the value, quantity, and quality of the goods were not false and fraudulent. The defendants seek to avoid their effect on several grounds. Their first contention is that "value and quality are always matters of opinion," and that fraud cannot be predicated upon false representations as to value and quality. Conceding the soundness of this rule, it has no application to this case. In the case at bar the representations made to the plaintiff by the defendants related to matters of fact, and

were not mere puffs or expressions of opinion. They related to the condition of the goods, and their wholesale value, as shown by the invoice. Whether goods are old, shopworn, and moth-eaten are matters of fact; and when such goods are represented to a purchaser to be new goods, and of a given value at the wholesale price of such goods, as shown by an invoice of the same, such representations are not mere expressions of opinion as to the quality and value of the goods, but are the affirmations of fact; and, when false to the knowledge of the seller, and made with the intent to deceive and mislead the purchaser, who either has no opportunity to examine the goods for himself or is prevented from so doing by deceitful and fraudulent pretenses of the seller, he is guilty of an actionable fraud. Davis v. Jackson, 22 Ind. 233; Hanscom v. Drullard, 79 Cal. 237, 21 Pac. 736; Bradbury v. Haynes, 60 N. H. 124; Attwood v. Small, 6 Clark & F. 445. And the averments of the complaint give no room for the contention that the plaintiff had an opportunity to examine the goods for himself, and, not having done so, he cannot complain of the false and fraudulent representations of the defendants as to their character. It is an undoubted rule that one purchasing property must use his senses, and exercise ordinary diligence to ascertain its quality and character for himself, but, according to the averments of the complaint, the plaintiff was prevented from examining the goods by the deceitful practices and fraudulent representations of the defendants, made for that very purpose, and which accomplished their object. The defendants having by such means induced the plaintiff to forego an examination of the goods, they will not be heard to say, in effect, that the plaintiff ought to have known they were playing a confidence game upon him, and given no credit to their false representations and assurances. The law will not reward dishonesty and falsehood, and punish confidence and trustfulness, in any such way. The rule of caveat emptor is not founded on the highest standard of morals, but it is no longer a shield and protection to the deliberate frauds and cheats of sharpers. Where falsehood or deceit is practiced by the vendor for the purpose of throwing the purchaser off his guard, and inducing him to make the purchase without first making personal examination of the thing purchased, which, but for such fraudulent practices, he would have done, it does not lie in the mouth of the vendor to say that by giving credit to his false and fraudulent representations the purchaser must be held to have been cheated and defrauded as the result of his own negligence and credulity. There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence, and refuses them redress, whenever they fail to act on that presumption. The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity. "No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool." Chamberlin v. Fuller, 59 Vt. 256, 9 Atl. 832. The supreme court of Minnesota, in the case of Maxfield v. Schwartz, 45 Minn. 150, 47 N. W. 448, 10 L. R. A. 606, says:

"If Berens & Nachtsheim were seeking to enforce the written contract, a plea of fraud, such as is here presented, would constitute a defense, even though the defendants may have been wanting in ordinary prudence in relying upon the representations of the other contracting party as to the tenor or contents of the writing. They might still rely upon the defense that this was not their contract. C. Aultman & Co. v. Olsen, 34 Minn. 450, 26 N. W. 451; Frohreich v. Gammon, 28 Minn. 476, 11 N. W. 88; Miller v. Sawbridge, 29 Minn. 442, 13 N. W. 671; Institution v. Burdick, 87 N. Y. 40; Linington v. Strong, 107 Ill. 295; Gardner v. Trenary, 65 Iowa, 646, 22 N. W. 912; Thoroughgood's Case, 2 Coke, 9; Stanley v. M'Gauran, 11 L. R. Ir. 314; Redgrave v. Hurd, 20 Ch. Div. 1, 13; Pol. Cont. 401 et seq., and cases cited; Bigelow, Frauds, 523–525. While in the ordinary business transactions of life men are expected to exercise reasonable prudence, and not to rely upon others, with whom they deal, to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary. As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him."

The vendor cannot complain that the purchaser relied too implicitly on the truth of representations he himself made, knowing them to be false, but intending that they should be received and acted upon by the purchaser as true. In the case of Hale v. Philbrick, 42 Iowa, 81, the court says:

"We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehood."

And in Graham v. Thompson, 55 Ark. 299, 18 S. W. 58, the court says:

"The very representations relied upon may have caused the party to desist from inquiry, and neglect his means of information; and it does not rest with him who made them to say that their falsity might have been ascertained, and it was wrong to credit them. To this principle many authorities might be cited. Gammill v. Johnson, 47 Ark. 335, 1 S. W. 610; Bigelow, Estop. 627; Dodge v. Pope, 93 Ind. 480; David v. Park, 103 Mass. 501; Holland v. Anderson, 38 Mo. 55; Evans v. Forstall, 58 Miss. 30; Kiefer v. Rogers, 19 Minn. 32 (Gil. 14)."

In Warder v. Whitish, 77 Wis. 430, 46 N. W. 540, the court says:

"A person cannot procure a contract in his favor by fraud, and then bar a defense to a suit on it on the ground that had not the other party been so ignorant or negligent he could not have succeeded in deceiving him."

"As between the original parties," says the supreme court of Illinois in Linington v. Strong, 107 Ill. 302, "when it appears that one has been guilty of intentional and deliberate fraud, by which, to his knowledge, another has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence."

In Reynell v. Sprye, 1 De Gex, M. & G. 549, the court said:

"However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has too implicitly relied on the truth of things he has himself stated."

Another contention of the defendants in error is that the terms of the written contract set out in the complaint estop the plaintiff from claiming that he had not examined the goods, and from setting

up any claim for damages. The complant avers the sole object on the part of the defendants in procuring the execution of this contract was to further their scheme to defraud him, and protect themselves from the consequences of their fraud. This contract declared that the "stock of goods, wares, and merchandise has this day been fully inspected by said party,"—meaning the plaintiff,—and it further declares that the party of the first part "does by these presents accept the same in the condition it now is, and at the prices set forth in said inventories, waiving all claim for damaged goods, shortages, and prices," etc. Accepting the averments of the complaint as true, the execution of this written paper, as well as the deed and chattel mortgage mentioned in the complaint, were links in a long chain of artful and cunning frauds. The written contract was gotten up, and the plaintiff's signature thereto procured, by false and fraudulent representations for the sole purpose of protecting the defendants from an action for damages for the fraud which they were conscious they were perpetrating upon the plaintiff. Upon the averments of the complaint, the means used and representations made to procure the execution of these papers were false and fraudulent, and these papers are only to be regarded as parts of an elaborate scheme to deceive and defraud the plaintiff. The written contract contains the unusual and suspicious declarations which we have quoted, and which would seem to have no other purpose than to back up a fraudulent transaction. The object of reducing contracts to writing is to prevent, not to promote or to protect, fraud. In the case of Hofflin v. Moss, 32 U. S. App. 200, 14 C. C. A. 459, 67 Fed. 440, we had occasion to consider somewhat similar provisions in a contract, and we said:

"And the clause in a contract, 'that no representation, understanding, or agreement not in this contract shall bind either party, unless in writing, and signed by both parties, as this is the complete agreement of the parties hereto,' is of no avail to the plaintiff. This clause, to the extent that it is valid, expresses no more than the law would imply without it. False and fraudulent representations made by one party to a contract, by which the other party is induced to enter into the contract, render it voidable, at the election of the defrauded party; and a stipulation in such a contract to the effect that the false and fraudulent representations by which the one party induced the other to enter into it shall not affect its validity is itself of no validity. No one can be estopped by anything contained in an instrument, which instrument was itself obtained from him by fraud and deceit. The law will not give effect to a stipulation intended to grant immunity to iniquity and fraud. In the case of Bridger v. Goldsmith, 38 N. E. 458, the court of appeals of New York, discussing a somewhat similar provision in a contract, says: 'A mere device of the guilty party to a contract, intended to shield himself from the results of his own fraud practiced upon the other party, cannot well be elevated to the dignity and importance of an equitable estoppel. If the clause has any effect whatever, it must be as a promise or agreement on part of the plaintiff that, however grossly he may have been deceived and defrauded by the defendant, he would never allege it against the transaction, or complain of it, but would forever after hold his peace. It is difficult to conceive that such a clause could ever be suggested by a party to a contract, unless there was, in his own mind, at least, a lingering doubt as to the honesty and integrity of his conduct. * * * Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule, but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would, in a short time,

'break down every barrier which the law has erected against fraudulent dealing.' See, to the same effect, Fashion Co. v. Skinner, 64 Hun, 293, 19 N. Y. Supp. 62."

Clearly, upon the averments of the complaint, this case should go to a jury upon the issues of fraud. The judgment of the circuit court is reversed, and the cause remanded, with instructions to overrule the demurrer, and permit the defendants to answer.