### STANDARD STEAM SPECIALTY CO. v. CORN EXCHANGE BANK.
#### (No. 6038.)

(Supreme Court, Appellate Division, First Department.  July 10, 1914.)

BANKS AND BANKING (§ 148*) — DEPOSITS — UNAUTHORIZED INDORSEMENTS — LIABILITY OF BANK.

Where plaintiff's employé, authorized to indorse checks to a certain bank by the use of a stamped indorsement of plaintiff's corporate name and to affix thereto in her own handwriting the signature of its treasurer, indorsed a number of checks in the name of defendant by its treasurer, followed by her own name as indorser, and negotiated them to purchasers for value, who, in the regular course of business, indorsed and deposited them with defendant bank, which collected them and paid out the proceeds on the depositors' orders, defendant was not liable as for a conversion.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term, First Department.

Action by the Standard Steam Specialty Company against the Corn Exchange Bank. From a determination of the Appellate Term (146 N. Y. Supp. 181) reversing a judgment of the Municipal Court for defendant and directing a judgment for plaintiff, defendant appeals. Reversed, and judgment of the Municipal Court affirmed.

See, also, 147 N. Y. Supp. 1143.

The facts were stipulated as follows:

"First. That the plaintiff and defendant were at all the times mentioned in the complaint, and now are, domestic corporations created, organized, and existing under and by virtue of the laws of the state of New York.

"Second. That prior to the dates specified below, the plaintiff was the owner of 11 checks drawn to its order by various parties on different banks, the said checks with their respective dates, drawers, and the banks on which they are drawn, being as follows: (Here follows a list of 11 checks of different dates and for different amounts drawn on divers banks and aggregating $329.79.)

"Third. That at all the times mentioned in the preceding paragraph, the officers of the Standard Steam Specialty Company were Norman C. Brizze, president, and Percy H. Pinder, secretary and treasurer. That they were the only officers of the said company, and had entire charge of its business, which was conducted at No. 542 West Broadway, in the borough of Manhattan, city of New York.

"Fourth. That at all the times mentioned in paragraph 2, and for some time prior and subsequent thereto, one Harriet Cohen was employed by the Standard Steam Specialty Company as a stenographer and bookkeeper. That, besides her duties as stenographer and bookkeeper, the said Harriet Cohen was accustomed to take to, and deposit in the Greenwich Bank, West Broadway Branch, checks received by the Standard Steam Specialty Company, made out to its order. That the said Harriet Cohen was authorized and instructed by the officers of the Standard Steam Specialty Company to place on the backs of such checks a stamped indorsement, reading as follows, a rubber stamp being used for the purpose: 'Pay to the order of the Greenwich Bank. The Standard Steam Specialty Co.' and to affix to such stamped indorsement, in her own handwriting, the signature of Percy H. Pinder, treasurer. The checks so indorsed and deposited by her were received from the officers of the company, when they opened the mail, and were sometimes taken from the mail when she herself opened it, as she was authorized occasionally to do. The said Harriet Cohen was not verbally or in writing instructed or authorized by the officers of the Standard Steam Specialty Company to indorse checks, except in the manner above set forth. During the period above mentioned, the said Harriet Cohen indorsed and deposited in the Greenwich Bank to the credit of the Standard Steam Specialty Company a large number of checks, made out to their order; the indorsement of the Standard Steam Specialty Company by Percy H. Pinder, treasurer, being in the manner set forth above. That the 11 checks described in paragraph 2 were either taken from the mail, opened by the said Harriet Cohen, or delivered to her by the officers of the said Standard Steam Specialty Company for indorsement and deposit in the Greenwich Bank, West Broadway Branch, to the credit of the plaintiff in the manner set forth above.

"Fifth. That the 11 checks mentioned in paragraph 2 herein were indorsed by the said Harriet Cohen in her own handwriting, as follows: 'Standard Steam Specialty Company, Percy H. Pinder, Treasurer'—there being some unimportant variations of the indorsements on different checks, none of which are material to the issues in this case. Each of the said checks were also indorsed, 'Harriet Cohen,' or, 'H. Cohen.' The first nine of said checks were presented by Harriet Cohen, after such indorsement, to one Ben Goodman, who gave the said Harriet Cohen the face value of said checks in cash, in good faith, and without any knowledge that Harriet Cohen was thereby diverting the proceeds of said checks to her own use. The last two of said checks mentioned in paragraph 2 of said complaint were presented by Har-

riet Cohen, after such indorsement, to one R. B. Robbins, who gave the said Harriet Cohen the face value of said checks in cash, in good faith, and without any knowledge that Harriet Conen was thereby diverting the proceeds of said checks to her own use. That both the said Ben Goodman and R. B. Robbins, after receiving the checks so indorsed by the said Harriet Cohen, indorsed the said checks in their own name, and deposited them in the regular course of business, with the defendant, the Corn Exchange Bank, with whom they both had at that time separate accounts. The defendant, the Corn Exchange Bank, collected the proceeds of the said checks and applied them to the respective accounts of Ben Goodman and R. B. Robbins, and paid out the proceeds so collected in the regular course of its business upon the order of said depositors. The proceeds of all of the above checks mentioned in the foregoing paragraphs No. 2 amounting to $329.79 were appropriated by the said Harriet Cohen and converted to her own use, the plaintiff never having received such proceeds or any portion thereof either from the said Harriet Cohen or from any other source.

"Sixth. Before presenting the said checks for payment to the respective banks on which they were drawn, the defendant, the Corn Exchange Bank, stamped on the said checks one or the other of the following indorsements:

" 'Received Payment:
" 'Through the New York Clearing House
" '(Date)
" 'Indorsements Guaranteed
" 'The Corn Exchange Bank of New York
" 'Frederick T. Martin, Cashier
" 'H.'

" 'Pay any Bank, Banker or Trust Company
" 'Or Order
" 'The Corn Exchange Bank, N. Y.
" 'Indorsements Guaranteed
" 'Frederick T. Martin, Cashier,
" 'Harlem.'

"Seventh. That the defendant at the time it received said checks from Ben Goodman and R. B. Robbins, and at the time of collecting the proceeds thereof and paying out the same upon the order of said depositors, had no notice, knowledge, or suspicion tending to impeach the validity of said checks, and took them without notice of any limitation, defect, or infirmity in the title thereof, or any limitation or infirmity in the title of Harriet Cohen thereto, or any limitation upon her right to indorse or transfer the same, and that the defendant received said checks in the regular course of its business and in good faith and has parted with value therefor.

"Eighth. That the plaintiff has demanded the payment of the amount of said checks set forth in paragraph 2 from the defendant, and the defendant has failed and refused to pay the same. The aforesaid demand on the part of the plaintiff was made after the proceeds of all of the said checks had been collected by the defendant and paid out upon the order of its depositors as hereinabove stated."

. Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

John J. Halpin, of New York City, for appellant.
Henry M. Stevenson, of New York City, for respondent.

SCOTT, J. Upon the foregoing facts we are unable to distinguish this case in principle from Salen v. Bank of State of New York, 110 App. Div. 636, 97 N. Y. Supp. 361, in which Mr. Justice Clarke carefully examined all the authorities on the subject and clearly demonstrated the distinction between the case in which he was writing, and

those upon which the plaintiff in the principal case relies. Schmidt v. Garfield Natl. Bank, 64 Hun, 298, 19 N. Y. Supp. 252, affirmed 138 N. Y. 631, 33 N. E. 1084; Robinson v. Chemical Natl. Bank, 86 N. Y. 404. We can add nothing to what was said in the Salen Case, and it would serve no useful purpose to reiterate what was written there.

The circumstances that plaintiff's employé was furnished with a rubber stamp does not in our opinion differentiate the cases. That was a mere matter of convenience. The point is that she was authorized to indorse the checks in plaintiff's name. Whether the legend attached above the signature was written or stamped was immaterial.

The determination of the Appellate Term must be reversed, and the judgment of the Municipal Court affirmed, with costs to the appellant in all courts. All concur.

---

(163 App. Div. 489)

### GLENDENNING v. WESTERN UNION TELEGRAPH CO. (No. 6033.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. LANDLORD AND TENANT (§ 76*)—CONDITIONS AS TO ASSIGNMENTS—WHAT CONSTITUTES "ASSIGMENT."

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 225–230; Dec. Dig. § 76.*

For other definitions, see Words and Phrases, vol. 1, pp. 566–571; vol. 8, p. 7584.]

2. PRINCIPAL AND AGENT (§43*)—REVOCATION OF AUTHORITY—POWER COUPLED WITH INTEREST.

The powers of attorney to O. were coupled with an interest and were not revocable by the death of the lessee.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 67–71; Dec. Dig. § 43.*]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.